Good morning, Your Honor. Bonnie Williams on behalf of Mr. Schumach were a little out of order, but I'm taking up the only issue I raised in my brief, which was the expert opinion who, the expert who opined on both the fact that it was, this was a Ponzi scheme and then went further and explained what a Ponzi scheme was and that it was a fraud. My argument is that it clearly violates Rule 704B of the Federal Rules of Evidence. You stated an opinion and went the step further of calling it a fraud. As this Court knows, the elements of mail fraud and wire fraud, in mail fraud there's five elements. Each one of them uses the word fraud or fraudulent intent. And wire fraud, in four elements, three out of four of them use the word fraud or fraudulent intent. So not only did she use the word Ponzi scheme, which in the general vernacular we all know is a fraud, the government took her a step forward and asked her, what was this? And she said it was an investment fraud. But don't those terms, the Seventh Circuit has said those terms have a colloquial usage. I referred to myself half-jokingly this morning as a fraud. And so, I mean, it's, you know, we use those terms, kind of throw them around. It's not necessarily a statement about mental state, is it? It is a legal conclusion, Your Honor, that it was a fraud and that was what our clients were charged with. They were charged with specifically an investment fraud. And I do agree that Ponzi and the word fraud is used in a colloquial sense, but that is exactly what these people were charged with. Does that mean – maybe the answer is yes – but does that mean in a murder case nobody could get on the stand and say there was a murder? Because that would entail malicious intent or whatever. I can say that I would think they could say someone was killed, but I think using, again, the word murder takes it a step further. Like she could have said in this case, as she did, that there was money that was taken from new investors and put in, and that money was used to pay – or maybe I have it vice versa – the old investors. That she could have said, but she took it one step further and made both the legal conclusion and the factual conclusion that it was a fraud, which in this case clearly violated Rule 704B. Such that no instruction could cure it, right? The district court, I think, gave three different sets of instructions. The district court did give three very long instructions trying to cure it, and in my opinion only highlighted it further, because throughout this 29-day trial, this was the only time that the district court gave instructions like this, that basically he said repeatedly – and God knows we love Judge Hurley – that she couldn't opine on the defendant's mental state, that she couldn't say that what they did was a fraud, but that's exactly what she said they did. And so, in my opinion, Your Honor, and in all of our opinions, she violated Rule 704 and the judge erred by not declaring a mistrial in this case. Thank you. I will reserve my 53 seconds for rebuttal. Thank you. Mr. Rosenzweig. Thank you for pronouncing that correctly, Your Honor. May it please the court. My name is Neil Gary Rosenzweig, court-appointed counsel for Joseph Signore. I will use four minutes of my time and reserve one for rebuttal, and I'd like to discuss the denial of Mr. Signore's myriad motions for severance and mistrial. Counsel for both Mr. Signore and his co-defendant Paul Schumach made it abundantly clear to the district court pretrial that their defenses would be both mutually antagonistic and irreconcilable. Schumach intended to do everything possible to convict Signore, including the introduction of evidence of Signore's prior criminal and other bad acts. He moved, this is again Schumach's counsel, moved to be able to tell the jury an opening statement that Signore had prior convictions for fraud, that he used the Social Security number of someone else for purposes of obtaining credit, and that he filed twice for bankruptcy. And while he wasn't permitted to do this, his co-counsel informed the jury that Signore blamed Schumach for Signore's Ponzi scheme through lies, deceptions, and misrepresentations. Examples of how he went about questioning witnesses. The very first witness was Melissa Cooper, who went to work for JCS, Signore's company, after seeing the machines, these virtual concierge machines in action at the baseball stadium in Jupiter. And she tried to get money back that she had invested for friends from Signore. So Schumach went at her on cross. Oh, also, one of the jurors had remarked that this was the star witness for the government. On cross, Schumach asked, because what you were trying to do was convince the person who was head of JCS, who you knew was committing a fraud, to return your friend's money. There was an objection. It was sustained. There was no curative instruction given. Cooper later admitted that she had never spoken to Signore about his business. Later on, Andrew Saka, who was a credit salesman involved with Signore trying to obtain credit for his business, was asked, now when you forwarded this information, which is contained in the government's exhibit, I believe when you conveyed that information and you forwarded it, were you knowingly and intentionally conspiring with Mr. Signore to perpetrate a fraud against anybody? Objection, argumentative, sustained. Mr. Morrison, I'm having a hard time following what issue it is that you're specifically arguing right now. You know, you had said something about the severance issue, which was an issue about which I had some concerns because the parties have cited the Garcia case from our precedents, which it seemed to me was, we have since made clear that the Supreme Court is essentially abrogated in the Zafiro case. Is that the issue you're talking about? Well, I'm certainly faced with the panel's decision in Hardy versus Commissioner, which rejected the second prosecutor theory. I mean, the second prosecutor theory is the basis for my argument this morning, and it was the main one in my brief. And the problem that I have is that in 2012 or 13, a panel of this court rejected the second prosecutor theory based on Zafiro. The problem with that was that the panel said that Zafiro didn't discuss the second prosecutor theory, and therefore it's not available to this defendant, when in fact the Zafiro court specifically stated that district courts might find the requisite degree of prejudice in other situations not discussed here. So to say that it wasn't discussed in Zafiro, so we're not going to recognize it, when the Zafiro court specifically said there could be other situations, just doesn't seem to hold much water. Okay. Thank you. Mr. Rosenbaum. Good morning, Your Honors. May it please the court. My name is Richard Rosenbaum on behalf of Laura Grande-Signore. I am prepared and tasked with arguing the jury misconduct issue, but I too have raised a severance question in my case. So Judge Pryor, if you do have a question in that regard, I'm happy to do it. My problem had been that the parties seemed to be focused on precedent, our precedent, or Garcia, that had been, that we have at least a couple of times seemed to have said has been abrogated by the Supreme Court in Zafiro, that there's no this mutually antagonistic defenses, you know, line of arguments, really just no longer the law. Right, and we do understand that. However, the sole basis for the court's denial of the motion for severance was based on Garcia. So the case, the court had based it upon the case that is now in question. But from Laura Grande's perspective, she felt that she couldn't get a fair trial going to trial with Mr. Schumach and her soon-to-be former husband. With regards to the juror misconduct issue, many times you go through cases and you won't have one single juror misconduct issue. Sometimes you have one, sometimes two. This case, the juror misconduct infected the entire trial, and Judge Hurley respectfully committed error by failing to investigate and to review the extent of the infection. First of all, juror number 12 comes out and she admits that she's done two Google searches about the case. She's looked up Ponzi's, she's looked up Signore Ponzi's. Her mother and her fiancé are aware of it, and she and her co-workers even discussed it. Ultimately, once the government sides with Mr. Signore, the court decides to excuse her from the case over Laura Grande's objection. Now, once that juror is excused, and we argued that the way the court dealt with number 12 was error, then there's even more problems. First of all, the star witness for the government's on the stand. I wonder, but y'all objected to her being excused, right? Ms. Grande Signore did object, Your Honor. Okay. So yes, there's different, and I'm arguing, you know, for all three of us, so I'm trying to point out the differences with regards to the argument. So we have the coughing incident. Then we have juror three who submits a note to the judge, and she says that they're calling one of the co-defendants an old man, a dirty old man. They're talking about Laura Grande and how she has no emotion, and talking bad about her. They're wondering where the defense is going with the examination of the star witnesses. So clearly, these jurors are questioning the case before it's time to deliberate. Judge Hurley told them, and told them time and time again, don't do that. Now, when the court starts trying to give the curatives, the curatives, again, just highlight these errors that have occurred. Ms. Grande understands she's not entitled to a fully impartial, well, she's entitled to an impartial trial. But in this case, because of the juror misconduct, and because of the court's failure to fully investigate by failing to question juror five, juror 16 at great length, after there had been this note from juror three that directly implicated what they were saying, we believe that there's been an abuse of discretion and error has occurred. So, but help me here, because I think, do I have it right in my notes that the court dismissed juror 16, then instructed the jury in mass on the presumption of innocence, reiterated, don't do this, then polled the jurors individually, make sure they could keep an open mind, and then further asked them in mass whether they could reaffirm the presumption of innocence. Everybody says yes, and the judge says, I think I've done enough. Why is that an abuse of discretion? Your facts are correct, but noticeably absent is any investigation into juror number five, who had been investigated. And again, it's the, can you follow my instructions and be fair? Yes, we can. Is that enough to ensure that Laura Grande got a fair trial, based upon the repeated instances? We believe it's not, and ask for reversal. Okay. Thank you. Mr. Matzkin. Good morning, Mr. Matzkin. Good morning. May I proceed? Yes. It's nice to have you back. Thank you. Thank you, Your Honor. Good morning, Your Honors. May it please the court, Dan Matzkin on behalf of the United States, with me at counsel table are Stephen Carlton and Ellen Cohen, who tried the case in district court. And we ask that Your Honors affirm the defendant's convictions in all respects. Unless Your Honors prefer otherwise, I'll begin with the 704B issue. And in so doing, I'd like to emphasize an aspect of the trial in this case that links all the issues that the defendants raised this morning. And that's the extraordinary level of care and thoroughness with which the district court instructed the jury and guided the jury through the 29 days of this trial. And that level of care and thoroughness was on full display during the direct examination of the government's forensic accountant, Ms. Davis. By my count, the district court instructed the jury four different times over the course of nine transcript pages on the proper scope of Ms. Davis' case. And the district court instructed the jury that she could testify and opine as to the business activities of JCS and TBTI, but she could not opine on the mental state of the defendants in this case. And her testimony followed those restrictions to the letter. She testified that based on her review of the business records and cash flows of the companies that they had operated a Ponzi scheme. And she said nothing whatsoever about the mental state of the individual defendants. She never testified that they fraudulently intended to defraud investors or that they intended to operate a Ponzi scheme. If your honors have no further questions on that issue, I'll turn to severance. And we agree with what appears to be Mr. Signore's concession that finding precedent forecloses his mutually exclusive defenses argument. I think this court made that clear in Blankenship, consistent with the Supreme Court's decision in Zafira. Turning to the juror misconduct issue, this court has made clear in cases like Bradley that the district court's discretion is at its zenith where the juror misconduct involves misconduct between or among the jurors. And that is precisely what happened with respect to jurors 5 and 16. And Bradley really is the best measuring stick for assessing the district court's handling of the misconduct in this case. Because in that case, two jurors discussed or two jurors made comments that are even more egregiously improper. They said that they wanted to make sure that the defendants went to jail, you know, a comment that bears directly on the defendant's guilt, unlike the comments here. And in that case, the district court did even less by way of investigating the misconduct than the district court did here. In that case, the district court never interviewed either of the jurors, whereas in this case, the district court did interview juror 16. And the district court went even further here than the one in that case, because the district court made findings of fact that the jurors were telling the truth, could carry out their responsibilities. And it said it paid particular attention to juror number 5 and concluded as a finding of fact that she was telling the truth as well. With that, I believe I've addressed all the issues that the defendants have raised this morning. If your honors have no further questions, we ask that you affirm in all respects. Well, thank you very much, Mr. Maskin. We have no further questions. Thank you. Ms. Williams, you've saved a minute. Refer her to Beto. Yes, your honors. I want to go back to what actually happened. The question that was asked by the government is, did you form an opinion about what was going on with these companies, which at that point, Ms. Davis concluded that they were engaged in a Ponzi scheme, operating a Ponzi scheme. Then the government went the next step and asked her to describe what a Ponzi scheme is. And at that point, she described it's an investment fraud. This court in United States v. Long, although it's a Fed, it's not a published opinion, stated that the court stated that at that point, the witness said that it was an artifice or scheme to defraud. And this court said that's problematic. It comes closer to embodying an impossible legal conclusion, citing United States v. Scott, which is the case I cited throughout my brief. And that the experts' conclusion drew directly from the language of the statute, which is exactly what happened here. I guess, so I don't want to carry you too far over your time, but I'm now, this is dangerous. I'm now sort of intrigued by my own question earlier. Like, I mean, any time, does that crime has constituent elements? And your argument here basically is because you called it the crime fraud, that sort of necessarily brings with it all of the elements, one of which is mental state. So now I'm wondering about rape. I mean, so no witness could get on the stand in a rape trial and say that a rape occurred? Because it's got an element presumably about intentional, you know, sort of sexual assault without consent or whatever? Again, Your Honor, I would go to the sexual assault without intent, without using the word rape. Well, I think that might be the better practice. I just wonder, I mean, colloquially, we speak of rape, murder, fraud. Well, there's also a difference between a fact witness and an expert witness. And that's the problem we have in this case. It was an expert witness, Your Honor. And very, very briefly, I know I'm over my time, but Judge Brattle, I'm also a Jayhawk. I grew up in Bonner Springs, Kansas. Welcome. Two for two. Well, when they played Auburn, I was a Jayhawk too, but a lot of good it did me. I'm from Philadelphia, so I can't do anything about that. I realize I'm up against a panel precedent of this court. That doesn't mean, however, that an active member of the court could not ask for a revisiting of Hardy and perhaps Blankenship, especially when you look at Hardy and the reason given for rejecting the second prosecutor theory. Problem with this case in the main is Senor's defense was that he didn't possess fraudulent intent. And all that the jury heard throughout the 29 days of the trial was that he was a fraud. And the government couldn't do that or wasn't supposed to do that, but it didn't prevent co-defendants counsel from going after him at every turn. And they did everything include call him a criminal. Now, the other problem is that this jury, all they knew was Ponzi schemes were bad. Ponzi schemes were fraudulent. How could they go through the mental gymnastics to understand that in order to convict, you had to find fraudulent intent when all that they were hearing throughout the trial was he committed a Ponzi scheme. He was running a Ponzi scheme. Ponzi schemes necessarily contain the element of intent to defraud. Therefore, he's guilty and has the intent to defraud. Thank you, Mr. Rosenbaum. Thank you, Your Honor. Mr. Rosenbaum. The government cites to Bradley. We too believe that Bradley is important. It is precedent setting in this case, along with Harris. However, in Bradley, the 11th Circuit said you must fully investigate these claims of juror misconduct. And Judge Hurley just ignored that responsibility with regards to juror number five. And this was brought out in writing from juror number 16. I realize it's a tough burden to hoe, but with regards to the juror misconduct, this is an important issue that's permeated the case and we ask the court to reverse. Thank you. Mr. Rosenzweig and Mr. Rosenbaum, I noticed that both of you were court appointed and we appreciate you accepting the appointment and assisting the court this morning and the preparation of this appeal as well. Thank you very much. We'll now move to . . .